Case number 24-2450 from the Western District of Arkansas, Just Funky v. Think 3 Fold. Good morning, your honors. I'm Tim Cullen. I represent Just Funky. And before this case, I had no idea that plush toys were such big business, but apparently they are. This flows from a contract dispute between essentially an importer distributor of these plush toys and another mid-level distributor who ultimately intended to sell the toys to Walmart or other retail outlets. There are multiple dealings between the parties that make this somewhat complex. I think both briefs do a terrible job with the standard review, which strikes me as important here. Your blue brief just says, well, it's always de novo because it's summary judgment. And the red brief doesn't do much better. But what's the standard review under Arkansas law when the trial court finds no meeting of the minds? So cited in our brief was the Addington v. Walmart stores case on the standard of review, where the evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. So that's. I asked you about contract formation. That's what's at issue here, right? Yes, Your Honor. The district court granted summary judgment because you didn't prove, you never got to brief, you didn't prove a contract. Now, contract formation, in my understanding, like most questions of contract interpretation, is itself a question of law. Yes, Your Honor. But it turns on lots of facts. Lots of facts. And when those facts. for how we apply that principle to this case. Nobody talks about that. The other case we cited, Your Honor, was the Tortee v. Hogue case, which talks about the intention of the parties. It talks about interpreting the contract as a whole based on the circumstances surrounding its execution. It's always the devils in the details. You go back and forth about whether this email shows more than that response and so forth. And the district court looked at all those things and said, I see no meeting of the minds here. I see back and forth and everything but meeting of the minds. How do we review that? And that's our contention, Your Honor, is that. Your brief says it's a jury question. It clearly isn't. When the court may want the help of the jury, but the ultimate issue is still a question of law. But it was a contract formed. It was decided based on weighing disputed facts. Even if they weren't disputed, they were facts on which different, different, reasonable people could draw different conclusions. So that is where we believe it was improper to grant summary judgment on that point. And it would have been proper to develop those facts through testimony and a trial. And that's, yes, it turns on the standard of review, Your Honor. Agreed. 100%. It might have been more discovery. Yes. Yes. So that, and that's our first point is summary judgment. I don't see any error in all of this back and forth for the judge to say, I see a lot of back and forth, but I never see a document or an exchange of documents or a series of communications that has me comfortable, both parties saying, okay, we got a deal now. Let's go, where do we go from there? And perhaps our best single fact on that, Your Honor, is the email that was, it was pasted into the first brief, but unfortunately was illegible, so I put it in the reply brief. And it's the email from Allison Biggers, who is a principal for Think Threefold, and Raj Arora, who is the principal for Just Funky. And it's where Ms. Biggers acknowledges a debt of $172,000, which at least part of that is undisputed, this $21,000 charge for shipping for these materials. So where we have an acknowledged debt, we think that is evidence of the breach of contract. Well, counsel, the threshold question that I have is whether this case is properly analyzed under basic Arkansas contract law or whether it's properly analyzed under Arkansas uniform commercial code. And it makes a difference. And did the court conduct a proper analysis? That's an interesting question, Your Honor, because we cited both to at least one UCC provision about definiteness as to certain terms, like pricing may not be fatal to a contract in all circumstances. And as I recall, the district court's opinion also mentioned the UCC, but we also addressed common law principles of contract formation. So I guess the answer is both, but I haven't considered it exactly that way, Your Honor. Well, doesn't it make a big difference if there are missing terms, such as price? Right. Well, the UCC has that placeholder or that provision that a missing term is not necessarily fatal to a contract formation. Yes. So that could make a huge difference, if I'm understanding Your Honor's question right. Perhaps the more interesting issue is the second one about setoff. Setoffs are unique defenses in the law because they can apply even from different transactions. And, you know, just as an example that doesn't apply here, but the statute of limitations doesn't even apply to a setoff. But here, the trial court refused to consider a setoff on basically a pleading waiver saying that it was not adequately pled. And that's where I've cited to this court's decision in Crutcher v. Multiplan that acknowledges that setoffs can be a proper when they're even just bare assertions or incorporations by reference from other pleadings. And we have significantly more than that here. There is an incorporation by reference, which was specifically in one of just Funke's answers that says plaintiff affirmatively pleads the affirmative defense of setoff. So there's ample notice there under this court's language. And really that's the standard is notice. You don't have to go into great detail to plead and preserve setoff. The other side just has to have notice. And nonetheless, the district court refused to consider setoff as a defense. And that's cited in the district court's decision at page 25 of the second district court decision. And that's in our appendix attached to the brief. But what the district court just said, it decides this on think three's breach of contract claim. It need not further dissect just Funke's argument or make a decision on the applicability of this defense. This defense being the setoff. But then the district court footnoted that and said, well, even if setoff did apply, we would have decided this on the alternative claims, which I think were promissory estoppel and unjust enrichment. Sorry, I'm getting ahead of myself. Yeah, so that was footnote 16 to the district court's decision, where it said even if just Funke were to have alleged setoff as a defense to the breach of contract, the court would have decided this case on one of think three's alternative theories. The court would have found that just Funke failed to establish this defense. But in another part of the decision, it makes it perfectly clear that the district court did not decide the case on those other two alternative grounds. So you have sort of this internal inconsistency in the ruling. First, the district court said setoff is waived. And we believe that's obviously wrong based on this court's standard and what was pled and what was developed in the hearings about the setoff defense. But then next, you've kind of got this alternative holding. And I've cited this court to Karsten v. Kaiser from the Fourth Circuit, which was the best case I could find that addressed this unique situation where you lose on one grounds, but the court says, well, you would have lost on another grounds, but doesn't give any analysis to support that. And so you have a tricky situation, that's how the Fourth Circuit explained it, is a tricky situation where it can result in impermissible advisory opinions if this court is reviewing something that was an alternative holding in a footnote that was never addressed or analyzed. So that's the more thorny issue in this case in my mind. And I think – Mr. Cullen, I may be confused, but – Yes, sir. Isn't the setoff defense dependent on the finding of a contract in the first place? Not necessarily. No, the setoff could be – is my understanding, could be from equity, could be from money that someone owed a party in another transaction. And likewise, you know, even if the statute of limitations had expired. And it does dovetail with if there was – whether or not there was a contract, but this admitted debt that Ms. Biggers stated of the $172,000 is a key fact in the setoff also. So they are related,  But there's no debt if there's no contract, right? And therefore, no setoff. I think there are ways that a setoff can apply without a contract because you can – it can apply from other transactions between the parties. But the basis of your setoff was not other transactions. It was the contract. Well, for instance, it's the equity that think three admits they didn't pay the $22,000 in shipping and that was part of that $172,000. So it's – it can be an equity in addition to a contract. I'm down to four minutes. I would like to reserve my time for rebuttal. Just one – one more.  Back to the first issue. What was the evidence of a meeting of the minds on a price term? The original purchase orders are one piece of evidence. And we cited to an Arkansas case that says – If purchase orders are an offer, where was the acceptance? In the correspondence and communication back and forth between the parties. And that's where you have to take the context and combine everything together. But we cited an Arkansas case that said specifically that purchase orders are the type of objective evidence to support a contract. All right. It would help me if you could point to something that says, here's the purchase order at $2.33 per unit, X thousand units. We agree to that. Can you point to something like that? May I sit down and address that in rebuttal if I can find it? Thank you. Good morning. Good morning, Your Honors. This is Patrick Bernal for the Appellee Think Threefold LLC. If I could jump right into the last question from the appellate session and Judge Grunder's question. Spoiler alert. You're not going to see evidence of a meeting of the minds in this case because there wasn't one. The purchase orders were canceled. The parties agreed to that. Uncontradicted evidence. The email, which is actually a text message that opposing counsel referenced, is a May 2nd, 2022, text found on page 1673 of the appendix. On that same page, after the supposed acknowledgment, the supposed acknowledgment of this debt for $173,000, these are the text messages. They look like this and they're pretty small. So I'd recommend potentially blowing them up on your screens to get the best view. But what we see is, if we can reach an agreement on these other terms, we propose sending you $173,000. The same page, the appellate, Just Funky, says, I'll show you, and I quote, I need a few hours to review everything and discuss internally and then get back to you. That's what Just Funky says in response to the supposed evidence of an agreement on some of the terms. Further pages in this appendix, it's just a text thread, which goes from 1671 to 1680. And what we can see is back and forth in negotiations. And the very last message is on the evening of May 2nd. And it has the parties effectively throwing in the towel. This is on the bottom of page 1678. Let's let the lawyers talk. Let's give them an opportunity to resolve all matters. I tried my best to see how we can resolve this and I've gone as far as I can right now. Let's let the lawyers finalize. It's the blue text from Just Funky on the right-hand side of the page. So, I mean, that's the fundamental issue about why there was no contract. One of the requirements, of course, is a meeting of the minds. And we don't see one. We see good faith efforts to negotiate. And as to Judge Loken's point about was this a sales contract UCC case or are we just under the Arkansas common law? Our view is that we are under the UCC, the Arkansas Code version of that. This is a sale of goods. And there is a provision, as opposing counsel noted, for gap filling. The parties agreed on some terms but they couldn't agree on or they never agreed on others. So, we'll supply a term like when's the payment due or, you know, there's a reasonable way for a court to construe a contract when some but not all terms have been resolved. But that's not what we have here at all. We submit that Judge Brooks got this right at the trial court level when he said there is an absence of agreement with some terms missing. What we have is affirmative disagreement here. And that's what the parties text and emails after the purchase orders were sent and explicitly rejected. Counsel, let me ask you a follow-up question on that. Under the Uniform Commercial Code in the Arkansas statutes, parties can mutually assent to rescind an agreement. Do you think there's evidence in the record that the parties mutually assented to rescind the original purchase order in the event there was an original agreement? Yes, 100%. And what would that be? What evidence would there be of that mutual assent? Absolutely, Judge Gratz. We cited the evidence in our appellate brief in this case. The purchase orders themselves were issued in late November and early December of 2021. And the parties email back and forth and there's explicit disagreement about the price. The purchase orders all say $7 per unit with an asterisk pricing subject to finalization. JustFunkyLater proposes $9.50 per unit. Think3 says, no, that's more than we can pay. We don't want to do it. And the emails between the parties show cease of negotiations without a deal reached. We give up for now. They got back on track trying to reach a deal in late April of 2022, but no deal was ever reached. And the evidence of that is in the text messages, which I just cited for your court. So far, you've told me they never reached agreement on the terms, but did they agree to rescind? Yes, they did. They said, JustFunky wrote, we consider these purchase orders canceled and we're going to sell them to other purchasers. Think3's response, my client's response, okay, we're done talking effectively. And there are citations in our principal brief about that exact line. It was dialogued through emails. I thought the district court's treatment of the settlement agreement on the overall issues was far more important to the court than either counsel has suggested this morning. Yeah. I mean, particularly on the setoff, he said, wait a minute, that's water over the dams. When I held that the settlement agreement settled everything prior to that date. Right. And you're going back to prior to that date on a claim you've got pending in another state. And also with respect to formation. Right. So the timing's helpful. And there's also two different settlement agreements that we're talking about. One realized settlement agreement. One what? There's one executed settlement agreement that the parties performed under. That was from early April of 2022. And so that settlement agreement had a release of claims, of course, predating that settlement agreement. I just want to be clear that the parties were discussing a second settlement agreement in the late April. On the stuff at the port. No, it's a very convoluted procedural and factual back story. The port stuff was an isolated deal, which was the issue at trial, which my client prevailed on. It was a one-time, smaller settlement claim. He wants to take the agreement at the time of the million-dollar loan. Yes. Which got paid off and settled. Correct. And the court said that settled everything up until that time. And now they're saying that ongoing discussions before and after when we were talking about what about a bigger deal somehow shows a meeting of the minds on the bigger deal. And I thought the district court, as I understood the opinion, just said no. It didn't show that at all. We agree. I agree with that. But you can't ignore the function of the settlement agreement ruling in reviewing the court's decision with respect to what's now said to be a jury issue. I'm sorry, I'm not following the question. All meetings of the mind, including that led to the settlement agreement and its payoff. Can't be evidence of a bigger deal. We agree that the settlement agreement is not evidence of a bigger deal. The settlement agreement from early April was primarily to resolve a lender-borrower relationship under an earlier promissory note. I can't divorce all of the communications that they're relying on for the bigger deal from what was being resolved at the time with the settlement agreement and then the flushes in port and then, well, where you said you were sending them and I never got them and so forth. I don't see how all of this shows a meeting of the mind on the big deal. Right. Well, we agree. We're opponents of the big deal. We say there wasn't a big deal. So, I don't get where the agreement to rescind, where that even comes in. Well, it's belt and suspenders with the release that came from the settlement agreement because if there was a claim under the so-called earlier deal, so that would be from fourth quarter 2021, and supposedly there was a contract, if there was one formed and we say there was not, a claim for that contract would have been released from the later in time settlement agreement that was executed and performed under. I mean, as I infer the facts, it was Walmart that killed the deal. I think reading behind the scenes, that's very likely true. And everybody knew that. They didn't want to... Just Funky wouldn't make a sale that Walmart would support Think Three paying. They would leave... If Just Funky got its price and Walmart was able to get its resale price where it wanted it, Think Three is left holding a bag, so to speak. Right. So if they can't get Walmart in to make a compromise, it's strikeout. That's exactly right. We had the purchase orders executed at $7 pricing subject to potential negotiation. Walmart was comfortable buying at the markup that would have allowed my client to do its business and make a reasonable profit at that price. When Just Funky proposed higher pricing for $9.50, Walmart wasn't willing to pay the higher price that would have been necessary for that higher unit price. And that did have the effect of killing the deal. So we agree with you. It just seems to me... It's hard for me to imagine a district court who understood that that's what was going on could make an erroneous determination if there was not a meeting of the minds. Right. They couldn't get Walmart to play ball with both of them. That's right. And for our purposes in this case, of course, there's no meeting of the minds between Think Three, Fold, and Just Funky to form a larger sales contract. And whether Walmart was the driver or anything else, to prevail on their breach of contract claim for the larger deal, there has to be some objective manifestation that the parties agreed. And that's totally absent from the record. Didn't Aurora testify in his deposition that he and Biggers had reached an agreement on the larger deal? He did testify to that. But it's not true. Does it create a fact question? Well, that was at the trial. Right. That was at trial. The other point is under Arkansas contract law, a party's subjective interpretation of whether there's a contract or not doesn't come into the analysis. The law is looking for an objective manifestation of a sentence. And as Judge Brooks correctly ruled below, we don't just see the absence of that type of evidence. We see explicit disagreement at every turn. Another point I would just make, and this is in footnote six from the trial court's trial opinion, it's Just Funky can't even tell us what the terms of the supposing meeting of the mines are. At various times throughout the case, they've propounded different draft agreements and said, this is our final agreement. And Judge Brooks did a nice job of sort of a laundry list of all the different submissions they've made with all slightly different terms. All around $2 million or so all in. But they're all different. So the reason why there's not a uniform theory is because there's not a uniform contract because the parties never reach the deal. I see I have less than two minutes left. Just quickly addressing the set-off issue, if I may. There's two points fundamentally. One is we agree with a part on the legal standard, which is bare notice, a bare assertion, may suffice to provide notice and then give the other party an opportunity to respond. But the more salient question here is, notice of what? The operative pleading, which is document number 92, it's the answer to my client's counterclaims. There's two specific references to the set-off defense outside of the sort of omnibus boilerplate language, which references all of them. Both of those, and these are on page 2, paragraph 5 of the pleading, and page 3, paragraph 8 say, we are pleading set-off as an affirmative defense to a breach of the settlement agreement claim. Importantly, the breach of the settlement claim was withdrawn before trial so that wasn't at issue. In addition to those two specific references to set-off, there's just the general boilerplate language on page 7, paragraph 31 of the pleading, and that says we have set-off, estoppel, but it doesn't say in response to which claim. So under the interpretation principle, the specific trumps the general, we understood the specific reference to set-off to be just to the claim that was specifically enumerated and not to anything else. Thank you. Thank you. Referencing right where Mr. Bernal left off, that paragraph 31 at page 7 of that answer is towards the end of the complaint, and it's pretty plain that that preserves all those defenses at least as to this court's standard of bare assertion as to all claims. Trying to address the court's questions, we cited the Turner v. Eubanks in Arkansas case that talks about set-off is no longer just when there's a contract. Currently, any demand, right, or cause of action, regardless of how it may have arisen, may be asserted by way of set-off in any action to the extent of the plaintiff's demand. So that's my authority for this idea that the set-off is not, doesn't fail if you affirm on the summary judgment on the contract, because it's a claim that any demand, right, or cause of action that may arise. And it is a confusing, convoluted, factual scenario, but it's my understanding that the parties continue to negotiate terms even after that settlement of the loan. That settlement of the loan in April, the parties kept going and still were negotiating. And the best facts I have in addition to that email that we talked about, you know, at one point Ms. Biggers said she wanted to honor the existing POs, and this is in the trial court's opinion at Addendum 5, and she said, we do not want to cancel the orders.  at Addendum 12, the trial court's opinion, Ms. Biggers said, we have a good plan. We will pay the $173,000 Monday. We will pay the $1 million balance on Tuesday. We'll pay the remaining 50% by May 10th. We'll use the original settlement agreement. It will be updated with a new date. So this is one of those cases where unfortunately there is a multitude of back and forth between the parties, and it makes it very complex and difficult to follow. And that's why, Your Honor, I think it was improper to decide that issue on summary judgment because there are reasonable people could take those same undisputed emails and text messages and whatnot and come to different conclusions. So respectfully, we ask the court to reverse on both the summary judgment and on the set-off defense as raised. Thank you.  Thank you, Counsel. The case has been thoroughly briefed. Unusual situation. Quite a few issues. We'll take it under advisement. The argument has been helpful. Thank you, Your Honor.